**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JIMMY EUGENE RHODES, #15025-064,** ) <br> ) <br> **Petitioner,** ) <br> ) <br> vs. ) <br> ) <br> **WARDEN, USP-MARION,** ) <br> ) <br> **Respondent.** ) | Case No. 17-cv-0562-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Jimmy Eugene Rhodes, an inmate in the Bureau of Prisons, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on May 30, 2017. (Doc. 1). Following a jury trial in the Western District of Oklahoma in 2002, Rhodes was convicted of two counts of possession of a firearm by a felon (Counts 1 and 3),[1] possession of methamphetamine (Count 2),[2] possession of a stolen firearm (Count 4),[3] and maintaining a place for the manufacture, distribution, or use of a controlled substance (Count 5).[4] *United States v. Rhodes*, No. 01-cr-0202-R-1, Doc. 56 (W.D. Okla. April 10, 2002), Doc. 136, pp. 1–2. Rhodes' statutory sentence for Counts 1 and 3 was enhanced to a 15-year mandatory minimum pursuant to the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. §§ 924(e)(1) and 924(e)(2)(B)(ii) (1998)[5] based in part on two prior Oklahoma felony convictions: 1986 and 1990 convictions for burglary in the second degree pursuant to OKLA. STAT. tit. 21, § 1435 (1969). Without the ACCA enhancement, Rhodes would

---
[1] 18 U.S.C. § 922(g)(1) (1998).
[2] 21 U.S.C. § 844 (1996).
[3] 18 U.S.C. § 922(j) (1998).
[4] 21 U.S.C. § 856(a)(1) (2000).
[5] 18 U.S.C. § 922(e)(1) sets a 15-year mandatory minimum sentence for "a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense[.]"  Section 924(e)(2)(B) defines the term "violent felony," to include the enumerated crime of burglary.

1

have faced a statutory *maximum* penalty of 10 years on the felon in possession counts. 18 U.S.C. § 924(a)(2).

Rhodes now invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) to challenge his sentence enhancement based on the second-degree burglary convictions and contends he is entitled to be resentenced without the enhancement. Specifically, Rhodes argues that the Oklahoma statute of conviction is broader than the federal definition of burglary and criminalizes more conduct than the "generic" definition of burglary as defined by the Supreme Court because it criminalizes breaking and entering of railroad cars, automobiles, trucks, trailers, vessels, and vending machines. (Doc. 1, pp. 6–8). Respondent opposes issuance of the Writ, arguing that Rhodes cannot satisfy the requirements of § 2255(e)'s savings clause because his *Mathis* theory was not foreclosed by binding precedent before *Mathis* was decided, and *Mathis* does not apply retroactively to cases on collateral review. (Doc. 28, pp. 5–7). Rhodes replied to Respondent's response. (Doc. 30). This matter is now ripe for resolution. For the reasons discussed below, Rhodes' § 2241 Petition (Doc. 1) will be **GRANTED**.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Following a jury trial, Rhodes was found guilty on five counts, including two counts of possessing firearms after a felony conviction in violation of 18 U.S.C. § 922(g)(1), one count of possessing methamphetamine in violation of 21 U.S.C. § 844(a), one count of possessing firearms he knew to be stolen in violation of 18 U.S.C. § 922(j), and maintaining a house where methamphetamine was manufactured or distributed in violation of 21 U.S.C. § 856(a)(1). *United States v. Rhodes*, No. 01-cr-0202-R-1, Doc. 56 (W.D. Okla. April 10, 2002); *see also* Doc. 71; Doc. 107, pp. 1–2.[6] The Presentence Report ("PSR") provided to the sentencing court listed three

---

[6] Neither party has provided the Court with a copy of the jury verdict, PSR, statement of reasons, or judgment from Rhodes' underlying criminal case. These documents were all filed under seal and inaccessible to the Court. *See*

prior Oklahoma felony convictions that qualified Rhodes for an enhanced mandatory minimum sentence pursuant to the ACCA: a 1984 conviction for shooting with intent to kill; and 1986 and 1990 convictions for burglary in the second degree. *Id*. at Doc. 63-1, ¶¶ 52, 59–61; Doc. 128, pp. 2–3; Doc. 132, pp. 2–3.

The sentencing court determined Rhodes' Guideline Range to be 235 to 293 months imprisonment, based on a total offense level of 33 and a criminal history category of VI. *Id*. at Doc. 63-1; Doc. 124; Doc. 132, p. 3. Rhodes was ultimately sentenced to 260 months imprisonment on his felon in possession counts as a result of the ACCA enhancement predicated on his prior Oklahoma felony convictions. *Rhodes*, No. 01-cr-0202-R-1, Doc. 72 (W.D. Okla. Aug. 22, 2002); *see also* Doc. 136, p. 2. The sentencing court also imposed sentences between 36 and 240 months on the other three counts, all to be served concurrently to his 260-month sentence for the felon in possession counts. *Id*. at Docs. 71, 72. Rhodes has attacked his conviction and sentence in a variety of ways since his sentencing.

**Direct Appeal and First Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2255**

On direct appeal, Rhodes argued the district court erred in several of its pre-trial and evidentiary rulings, and also alleged that 18 U.S.C. § 922(g)(1) violated the Second Amendment. *United States v. Rhodes*, 62 F. App'x 869, 870–72 (2003). At that time, Rhodes did not appeal the

---

*Rhodes*, No. 01-cr-0202-R-1 at Doc. 56 (jury verdict), Doc. 63-1 (PSR), Doc. 124 (statement of reasons), and Doc. 72 (judgment). However, there are no factual disputes between the parties relating to the contents of these documents, and the Court was able to corroborate and confirm the relevant portions of these documents after reviewing the docket entries that were publicly available. *See, e.g.*, *Rhodes*, No. 01-cr-0202-R-1, Doc. 71 (minutes of Rhodes' sentencing hearing confirming his five counts of conviction and their respective sentences); *id*. at Doc. 107, p. 1 (sentencing court's restatement of facts in order denying Rhodes' initial § 2255 motion); *id*. at Doc. 128, pp. 2–3 (Government's responsive pleading to Rhodes' second successive § 2255 motion summarizing PSR contents and findings with multiple specific citations to the PSR's text); *id*. at Doc. 132, pp. 2–3 (Rhodes' reply in support of second successive § 2255 petition also summarizing PSR and statement of reasons with no apparent discrepancies with the Government's recitation of facts); *id*. at Doc. 136, pp. 1–2 (sentencing court's restatement of facts in order denying Rhodes' second successive § 2255 motion). All further citations to these sealed documents are accompanied by citations to one or more of these sources.

sentencing court's use of his prior Oklahoma burglary convictions to enhance his sentence under the ACCA. *Id*. The Tenth Circuit Court of Appeals upheld Rhodes' convictions in their entirety. *Id*. at 876.

Rhodes then filed a motion under 28 U.S.C. § 2255 in May of 2004. *Rhodes*, No. 01-cr-0202-R-1, Doc. 90 (W.D. Okla. May 17, 2004). At that time, he asserted that he was denied effective assistance of counsel at trial due to an irreconcilable conflict with his attorney. *Id*. at Doc. 107, p. 1. The motion was denied in all respects (*Id*. at p. 6) and the Tenth Circuit Court of Appeals denied Rhodes' request for a certificate of appealability. *Id*. at Doc. 115, pp. 11–12.

**Subsequent Applications for Authorization to File a Second or Successive Motion**

Beginning in 2010, Rhodes filed applications with the Tenth Circuit for authorization to file a second or successive motion for collateral review under § 2255. The first application challenged his classification as an armed career criminal under the ACCA pursuant to *Curtis Johnson v. United States*, 559 U.S. 133 (2010) and *Begay v. United States*, 553 U.S. 137 (2008). The Tenth Circuit denied Rhodes' application without reaching the merits of his argument, finding that neither *Johnson* nor *Begay* were new rules of constitutional law made retroactive to cases on collateral review by the Supreme Court. *Rhodes*, No. 01-cr-0202-R-1, Doc. 117.

Rhodes filed another application for authorization to file a successive § 2255 motion in May of 2016. *Id*. at Doc. 126. He argued that *Samuel Johnson v. United States*, 576 U.S. –, 135 S. Ct. 2551 (2015) required the invalidation of his sentence enhancement based on his Oklahoma burglary convictions. *Id*. at pp. 1–2. Rhodes invoked *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) in subsequent pleadings relating to this application, arguing that the Oklahoma second-degree burglary statute defines burglary more broadly than generic burglary under the ACCA. *Id*. at Docs. 128, 132. While the Tenth Circuit did authorize Rhodes' application to file

a successive § 2255 action, the district court ultimately denied Rhodes' motion, finding "the record does not support [Rhodes'] contention" that he was properly raising a claim under *Johnson*, and that his *Mathis* claim also failed due to Tenth Circuit precedent stating that *Mathis* did not apply retroactively in the context of an attempt to bring a habeas challenge under § 2255(f)(3). *Id*. at Doc. 136, pp. 3–5. The Tenth Circuit affirmed the district court's denial of Rhodes' § 2255 motion on appeal, concluding "there would have been little dispute at the time of [Rhodes' sentencing] that [his] burglary convictions constituted enumerated offenses [under the ACCA]," while specifically "express[ing] no opinion as to whether [prior Tenth Circuit cases analyzing the ACCA's enumerated clause] remain good law following [*Mathis*]." *Rhodes*, No. 01-cr-0202-R-1, at Doc. 147, pp. 3–5; (Doc. 14-1, pp. 3–5 in instant case). Rhodes' Petition for a Writ of Certiorari was denied by the Supreme Court.

Rhodes' most recent application for permission to file a subsequent § 2255 motion was filed in September 2019. The application was premised on *United States v. Davis*, 588 U.S. –, No. 18-431 (2019) and reiterated Rhodes' *Mathis* objections to his sentence. *Rhodes*, No. 01-cr-0202-R-1, Doc. 152-1, p. 4. The Tenth Circuit denied the application on October 9, 2019, finding that Rhodes did not make a prima facie showing that his proposed successive § 2255 motion relied on the new rule announced in *Davis* as he was not convicted under 18 U.S.C. § 924(c). *Id*. at Doc. 156, p. 4, nor did he show that *Mathis* announced a new rule of constitutional law so as to satisfy 28 U.S.C. § 2255(h)(2). *Id.* at Doc. 156, p. 5.

## **APPLICABLE LEGAL STANDARDS**

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir.

5

1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. *See*, *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A prisoner is also generally limited to only one challenge of his conviction and sentence under § 2255. He or she may not file a "second or successive" § 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, under very limited circumstances, a prisoner may challenge his federal conviction or sentence under § 2241. Specifically, 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."[7]

---

[7] The Seventh Circuit's interpretation of § 2255(e)'s savings clause is in line with a majority of the Circuit Courts of Appeals' jurisprudence on this issue. *See, e.g.*, *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997); *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997); *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000); *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001); *Martin v. Perez*, 319 F.3d 799 (6th Cir. 2003); *Ivy v. Pontesso*, 328 F.3d 1057, 1059–60 (9th Cir. 2003); *Abdullah v. Hedrick*, 392 F.3d 957, 960–63 (8th Cir. 2004); *see also Wright v. Spaulding*, – F.3d –, 2019 WL 4493487, at *3 (6th Cir. Sept. 19, 2019) (collecting cases).
   However, Rhodes was convicted and sentenced in the Tenth Circuit, one of two jurisdictions that have come to the opposite conclusion. *See Prost v. Anderson*, 636 F.3d 578, 584 (10th Cir. 2011) (holding petitioner may not use § 2255(e)'s savings clause to bring § 2241 petition where the legality of his detention could have been tested in

A petitioner must meet three conditions in order to trigger the savings clause. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first § 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a fundamental defect in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). "There must be some kind of structural problem with § 2255 before § 2241 becomes available. In other words, something more than a lack of success with a § 2255 motion must exist before the savings clause is satisfied." *See Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

## **ANALYSIS**

In *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243 (2016), the Supreme Court addressed the question of whether an Iowa burglary conviction was properly used to enhance a federal sentence under the Armed Career Criminal Act ("ACCA") and held that only where the elements of the predicate offense match or are narrower than the elements of the "generic" offense (in Mathis' case, generic burglary) may the prior conviction be used as the basis for enhancing a federal sentence. *Mathis*, 136 S. Ct. at 2247. The Iowa statute in question identified several alternative locations where the burglary may take place, including a "building, structure, . . . land, water, or air vehicle." *Id.* at 2250. The Court noted that the statute was "indivisible," describing a single crime with several possible modes, or "means," of commission, and found that because the generic offense of burglary is limited to unlawful entry into a "building or other structure" with

---

an initial § 2255 motion, even where his legal theory was foreclosed by binding precedent); *McCarthan v. Dir. Of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1099–1100 (11th Cir. 2017) (en banc) (federal prisoner may not use § 2255(e)'s savings clause to bring § 2241 habeas petition if he was free to bring such a claim in his initial § 2255 motion).

intent to commit a crime, the Iowa statute was overbroad. *Mathis*, 136 S. Ct. at 2248, 2250 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). As such, the Court concluded that the ACCA enhancement based on the Iowa conviction could not stand, even though the records in Mathis' Iowa case contained facts showing that his actual offense conduct matched the elements of generic burglary.

*Mathis* resolved a split among the circuits as to under what circumstances and for what purpose a court may consult state charging or sentencing documents (known as the "modified categorical approach") to determine whether a previous conviction, under an alternatively-phrased statute, may qualify as a career-criminal predicate offense. *See Chazen*, 938 F.3d at 857-59. *See also Shepard v. United States*, 544 U.S. 13, 26 (2005) (limiting the case documents which may be consulted by a court when comparing non-generic statute of conviction to generic offense). *Mathis* clarified that only if a statute is "divisible" – that is, it sets forth one or more *elements* of the offense in the alternative, each of which amounts to a distinct offense – may the modified categorical analysis be used to determine which of the alternatives formed the basis of the conviction in question, and whether the elements of that crime match the elements of the generic offense. Thus, if an "indivisible" statute lists alternative factual means to satisfy a single element, and if the alternative means include conduct that sweeps more broadly than the generic crime, then a conviction under the statute may not be used as a career-offender predicate offense, even if the particular defendant's conduct fell within the scope of the generic offense. *Mathis*, 136 S. Ct. at 2252 (sentencing court "cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense"); *Van Cannon v. United States*, 890 F.3d 656, 663 (7th Cir. 2018) ("the modified categorical approach has no role to play" if the statute is indivisible).

**Application of the 28 U.S.C. § 2255(e) Savings Clause**

A claim brought pursuant to *Mathis v. United States*, 136 S. Ct. 2243 (2016) satisfies the first condition implicating the savings clause as *Mathis* is a statutory-interpretation case. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016); *Dawkins v. United States*, 829 F.3d 549, 550–51 (7th Cir. 2016). As to the third condition, "a defendant sentenced in error as an armed career criminal satisfies the 'miscarriage of justice' requirement." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (citing *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014)). Thus, Rhodes has satisfied the first and third elements of the savings clause.

*Previous Availability of Petitioner's Mathis Claim*

In order to bring his claim within the scope of the second element of the savings clause, Rhodes must first establish that he could not have previously raised the claim he now presents. In two recent opinions, the Seventh Circuit articulated the test to be applied in evaluating the "prior unavailability" component. In *Beason v. Marske*, the court held that a § 2241 petitioner must show it "would have been futile" to raise his argument in his § 2255 motion because the "law was squarely against him." *Beason*, 926 F.3d 932, 936 (7th Cir. June 24, 2019) (quoting *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015)). In *Chazen v. Marske*, without stating which of its various articulations of the test should control going forward, the court concluded that the petitioner satisfied the "prior unavailability" condition because his claim had clearly been foreclosed by the law in his circuit of conviction at the time he might have raised it in a § 2255 motion. *Chazen*, 938 F.3d at 862-63. *See also Light*, 761 F.3d at 813 (noting that the circuit had "applied two different tests" as to prior unavailability under *Davenport*).

Here, Respondent simply asserts without further explanation that Rhodes' argument under *Mathis* was not made pursuant to a new rule of statutory interpretation. (Doc. 28, pp. 5-6).

Respondent does not, however, specifically address whether Rhodes' *Mathis* claim was unavailable at the time he filed his first § 2255 motion. (Doc. 28, pp. 1–8). Seventh Circuit precedent on this issue focuses on whether the law in the circuit of conviction would have been against the habeas petitioner. As such, the relevant question is whether Rhodes could have raised a *Mathis*-like argument in the Tenth Circuit in 2004.

Rhodes contends that such an argument was not reasonably available to him in the Tenth Circuit at the time of his direct appeal or his § 2255 motion (Doc. 1, pp. 4–5) and cites to *United States v. Hamilton*, 889 F.3d 688 (10th Cir. 2018) in support of his argument. (Doc. 25, p. 2; Doc. 30, p. 1). In *Hamilton*, the Tenth Circuit analyzed the statute under which Rhodes was convicted, contrasting its prior precedents with the Supreme Court's most recent guidance in *Mathis*. *Hamilton*, 889 F.3d at 692–93. It noted that before *Mathis*, it had approved the practice of applying the modified categorical approach to statutes without first analyzing whether the statute was divisible or indivisible. *See, e.g.*, *United States v. Green*, 55 F.3d 1513, 1515–17 (10th Cir. 1995). However, in *Hamilton*, the Tenth Circuit recognized that "[the modified categorical approach] is permissible only if the statute of conviction is divisible." *Hamilton*, 889 F.3d at 692. After consulting Oklahoma case law, statutory text, and the defendant's record of conviction, the Tenth Circuit concluded that it "must treat the Oklahoma [second-degree burglary] statute as indivisible," meaning it could not avail itself of the modified categorical approach. *Id.* at 693–99. It then concluded that a defendant's conviction under the Oklahoma second-degree burglary statute does not fit the ACCA's enumerated clause because such a conviction "could have been based on conduct falling outside the generic definition of burglary." *Id.* at p. 699.

As is clear from *Hamilton*, *Green*, and cases decided in the Tenth Circuit before 2018, this Court concludes that it would have been futile for Rhodes to have raised the challenges he sets

10

forth herein in the Tenth Circuit at the time of his direct appeal and § 2255 motion. This conclusion is supported by the Tenth Circuit's order affirming the denial of Rhodes' successive § 2255 motion in which the court noted that at the time Rhodes was sentenced, it "had repeatedly held that Oklahoma second degree burglary qualified as an enumerated offense [for ACCA enhancement purposes] if underlying documents indicated that the defendant burgled a building." *United States v. Rhodes*, No. 17-6096 (10th Cir. Jan. 26, 2018) (Doc. 14-1 herein).[8]

### *Retroactive Application of Mathis on Collateral Review*

The primary focus of Respondent's argument as to the second *Davenport* element is that "*Mathis* did not announce a new rule of constitutional law,[9] and the Tenth Circuit has specifically held that it does not apply retroactively." (Doc. 28, pp. 6–7). While Respondent concedes that the Tenth Circuit's language was "not directly decisive in [that] case," he also points to the language of *Mathis* itself to argue that *Mathis* is not a "new" rule of statutory interpretation. *Id.* This argument has been successful in this district in the past. District judges, noting the Supreme Court's statement in *Mathis* that it was applying the analysis first articulated in *Taylor v. United States*, concluded that *Mathis* did not constitute a new rule of statutory construction. *See, e.g., Blue v. Werlich*, Case No. 17-cv-1215-DRH, 2018 WL 6102844 (S.D. Ill. Nov. 21, 2018) (§ 2241 petition) (finding that because the reasoning in *Mathis* flowed from the precedents of *Taylor* and *Descamps v. United States*, 570 U.S. 254 (2013), Petitioner could have raised a *Mathis*-like statutory interpretation argument in a timely-filed motion under 28 U.S.C. § 2255); *Arnold v.*

---

[8] Rhodes' *Johnson* claim raised in the successive § 2255 motion failed because his ACCA enhancement was not based on the invalidated residual clause. As to *Mathis*, the Tenth Circuit "express[ed] no opinion" on whether its prior cases remained good law following that decision. *United States v. Rhodes*, No. 17-6096 (10th Cir. Jan. 26, 2018) (Doc. 14-1 herein, p. 4 n.2).

[9] The Western District of Oklahoma's conclusion refers to 28 U.S.C. 2255(h)(2), which governs the authorization for a second/successive § 2255 motion if it is based on a new rule of constitutional law made retroactive by the Supreme Court. As *Mathis* is a case of statutory interpretation, it does not meet that test, but may potentially be raised in a § 2241 petition asserting a savings clause claim under § 2255(e).

*United States*, No. 15-cv-881-DRH, 2018 WL 2087972 (S.D. Ill. May 4, 2018) (§ 2255 motion); *Hanson v. United States*, No. 16-cv-428-JPG, 2017 WL 3267952 (S.D. Ill. Aug. 1, 2017) (§ 2255 motion), *appeal pending*, No. 18-1149.

However, the Seventh Circuit has since spoken directly on this issue, affirming the grant of habeas relief to a § 2241 petitioner based on his *Mathis* claim **and** confirming the retroactive applicability of *Mathis* in line with its previous statements in *Holt* and *Dawkins*. *Chazen v. Markse*, 938 F.3d 851 (7th Cir. Sept. 9, 2019). After discussing its various articulations of the second savings-clause requirement in previous opinions, the court concluded that *Mathis* "fits the bill" as a basis for relief in § 2241, as an "intervening case of statutory interpretation [which] opens the door to a previously foreclosed claim." *Chazen*, 938 F.3d at 861-62. Thus, "*Mathis* is 'new' as a functional and practical matter for federal inmates seeking relief from a mandatory minimum sentence under the Act." *Id.* at 862.[10]

In light of *Chazen* and the Seventh Circuit's discussion of *Mathis* in *Van Cannon*, the Court concludes that *Mathis* set forth a new substantive rule of statutory construction that should have retroactive application in a § 2241 petition. *See Van Cannon v. United States*, 890 F.3d at 663; *Holt v. United States*, 843 F.3d at 721–22 ("substantive decisions such as Mathis presumptively apply retroactively on collateral review"). Accordingly, Rhodes' claim satisfies the second prong of the *Davenport* test. Because Rhodes has satisfied all three prongs of § 2255(e)'s savings clause, the Court will address the merits of his *Mathis* claim.

---

[10] The *Chazen* court stopped short, however, of reaching a blanket conclusion that *Mathis* would afford relief in all circumstances to a § 2241 petitioner: "In these circumstances, where the government has conceded that *Mathis* is retroactive and Chazen was so clearly foreclosed by the law of his circuit of conviction at the time of his original § 2255 petition, we conclude that Chazen has done enough to satisfy the savings clause requirements." *Chazen*, 938 F.3d at 863.

## Petitioner's Oklahoma Second-Degree Burglary Conviction
## Does Not Categorically Match the Generic Definition of Burglary

Rhodes challenges the classification of his 1986 and 1990 Oklahoma second-degree burglary convictions as violent felonies pursuant to the enumerated clause of the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii) ("[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . is **burglary**, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]") (emphasis added). While not raised by the parties, a review of the Seventh Circuit's recent decision in *Chazen v. Marske* identifies an issue for the Court to consider as an initial matter: which Circuit Court of Appeals' substantive law should apply to the merits of Rhodes' *Mathis* claim – the Seventh Circuit, where Rhodes is currently incarcerated, or the Tenth Circuit, where Rhodes was convicted and sentenced? As the concurrence in *Chazen* notes, the Seventh Circuit has not given explicit guidance on this particular issue. *Chazen*, 938 F.3d at 864-66 (Barrett, J., concurring). In *Chazen*, the government conceded that the substantive law of the Seventh Circuit applied to the merits of the petitioner's *Mathis* claim, and the majority opinion accepted that concession at face value without further discussion. *Id.* at 860 ("What is less clear, however, is whether, in evaluating the merits of Chazen's petition, we should apply our own precedent or the precedent of the circuit of conviction . . . [w]e need not decide this issue here because [of the government's concession] that the law of this circuit governs the merits of Chazen's claim.").

In the absence of such a concession by the parties, several district courts in this circuit and others have concluded that the law of the circuit of conviction should be applied because to do otherwise, would create "far more arbitrary" results by "bas[ing] the choice of law decision on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the

13

place of conviction." *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001).[11] That said, any potential uncertainty as to whether Seventh Circuit or Tenth Circuit substantive law should apply to Rhodes' *Mathis* claim will not change the outcome in this case; Rhodes' Oklahoma second-degree burglary convictions are improper predicates for his ACCA enhancement under the precedents of either circuit.[12]

At the time of both convictions, the Oklahoma second-degree burglary statute provided:

Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree. OKLA. STAT. tit. 21, § 1435 (1969).

---

[11] *See also Cano v. Warden USP–Terre Haute*, No. 2:17-cv-441, 2018 WL 3389746 (S.D. Ind. July 12, 2018); *Roberts v. Watson*, No. 16-cv-541, 2017 WL 6375812 (W.D. Wis. Dec. 12, 2017); *accord Burgess v. Williams*, No. 4:18-cv-2643, 2019 WL 2641902 (N.D. Ohio June 27, 2019); *Eames v. Jones*, 793 F. Supp. 2d 747, 749 (E.D.N.C. 2011).

[12] Because there is no discernible conflict between the Seventh Circuit's and Tenth Circuit's substantive law here, the Court was faced with one less "staggering[ly]" complex issue that § 2241 petitions can force courts to "untangle." *Chazen*, 938 F.3d at 863, 866 (Barrett, J., concurring). However, there is perhaps an even more fundamental question to address in a case like this—should the Tenth Circuit's jurisprudence regarding the **savings clause itself**, not just the substantive law of the underlying conviction, presumptively apply to Rhodes' Petition? Recall that the Tenth Circuit takes the minority view that a petitioner may not use § 2255(e)'s savings clause as a vehicle for a § 2241 habeas petition if he could have raised the same argument in his initial § 2255 motion, even if such an argument was foreclosed by binding circuit precedent at the time. *See supra*, p. 6, at n.7; *Prost*, 636 at 580 ("The fact that § 2255 bars Mr. Prost from bringing his statutory interpretation argument *now*, in a *second* § 2255 motion almost a decade after his conviction, doesn't mean the § 2255 remedial process was ineffective or inadequate to test his argument. It just means he waited too long to raise it."). Simply put, if Rhodes were housed in a Bureau of Prisons facility within the Tenth Circuit's borders, his Petition would have been summarily denied based on *Prost*. But, because he was incarcerated at the USP-Marion facility in Illinois when he filed this action, his Petition may be considered under the savings clause jurisprudence of this Circuit.

This result "base[s] the choice of law decision [as to the availability of the savings clause] on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction." *Chazen*, 938 F.3d at 865 (Barrett, J., concurring) (quoting *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001)). However, the conflict involves the differences between the circuits' savings clause jurisprudence and not the substantive jurisprudence on the underlying criminal issues, such as a given circuit's interpretation of the ACCA. The Seventh Circuit has at least recognized, though not decided, the latter situation. *Id*. at *7 ("What is less clear, however, is whether . . . we should apply our own precedent or the precedent of the circuit of conviction . . . . We need not decide this issue here[.]"). And while the Seventh Circuit has not explicitly discussed whether such choice of law issues apply to the law of the savings clause itself where a petitioner was convicted and sentenced in another district, past discussions in those scenarios have been entirely in the context of Seventh Circuit precedent with no citation to extra-circuit law on the matter. *See Brown*, 719 F.3d at 586; *Light*, 761 F.3d at 812–14; *Chazen*, 938 F.3d at 855-56. That, combined with the parties' silence on the issue, obviates the need for the Court to delve further into this question.

Citing *Mathis*, Rhodes argues that the statute criminalizes a broad swath of conduct, including the burglary of automobiles, trucks, trailers, vessels, and even vending machines. (Doc. 1). He further argues that therefore, the Oklahoma statute's locational element is broader than the "generic definition" of burglary as set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 598 (1990).[13]

As long ago as 1995, the Tenth Circuit recognized that on its face, this statute clearly criminalized more conduct than the generic definition of burglary. *United States v. Green*, 55 F.3d 1513, 1516 (10th Cir. 1995) ("Because the Oklahoma statute defines burglary in terms broader than the *Taylor* definition [of generic burglary], Defendant's conviction cannot as a categorical matter provide a basis for enhancement under the ACCA."). And, following the Supreme Court's decision in *Mathis*, the Tenth Circuit acknowledged unequivocally that it must now determine whether OKLA. STAT. tit. 21, § 1435 is divisible or indivisible prior to applying the modified categorical approach to save the statute from its overbroad language and observed that "[n]either Oklahoma case law, the text of the Oklahoma statute, nor the record of conviction establishes with certainty whether the locational alternatives constitute elements or means." *United States v. Hamilton*, 889 F.3d 688, 692–93, 698-699 (10th Cir. 2018). In light of that uncertainty, the *Hamilton* panel concluded that it "must treat the Oklahoma statute as indivisible," and its indivisibility combined with the plain overbreadth of its text meant that convictions pursuant to that statute could not be used as ACCA predicate offenses. *Id*. at 699.

Thus, under the substantive law of the Tenth Circuit, this Court concludes that Rhodes' *Mathis* claim succeeds on the merits and his 1986 and 1990 Oklahoma second-degree burglary

---

[13] The *Taylor* court defined the generic meaning of burglary to be "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id*. This is the generic definition of burglary analyzed in *Mathis*. 136 S. Ct. at 2248.

convictions may not be considered as proper predicates for his ACCA sentence enhancement. Absent those convictions, Rhodes no longer has the requisite three predicate "violent felony" offenses to support the application of the 15-year mandatory minimum sentence for the felon in possession convictions (Counts 1 and 3) and the 10-year maximum sentence in 18 U.S.C. § 924(a)(2) would apply to those counts. Accordingly, Rhodes is entitled to be resentenced free of the armed career criminal designation that was incorrectly imposed.[14]

## CONCLUSION

Petitioner Jimmy Rhodes' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** and the following relief is **ORDERED:**

1. The career-offender-enhanced sentence of 260 months for Counts 1 and 3 imposed upon Jimmy Eugene Rhodes by the Western District of Oklahoma in Case No. 01-cr-0202-R-1 is **VACATED**.

2. Rhodes shall be resentenced forthwith by the Western District of Oklahoma.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Rhodes.

4. The Clerk of Court is **DIRECTED** to furnish certified copies of this Order and the Judgment entered in this case to the Bureau of Prisons, the United States Attorney for the Western District of Oklahoma, and the Clerk of the District court for the Western District of Oklahoma for filing in Case No. 01-cr-0202-R-1.

**IT IS SO ORDERED.**

**DATED: November 5, 2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

---

[14] Respondent reserved the right to oppose Rhodes' "Affidavit-Declaration in Support of New Sentencing" (Doc. 27), which asserts that he is entitled to immediate release if he is granted relief pursuant to *Mathis*. (Doc. 28, p. 5 n.2). This Court does not directly address the assertions raised by Rhodes in that document; instead, Rhodes' arguments are more appropriately raised in the Western District of Oklahoma in the context of the resentencing hearing ordered herein.